Bondarevsky v Shamis Chiropractic P.C. (2024 NY Slip Op 50916(U))

[*1]

Bondarevsky v Shamis Chiropractic P.C.

2024 NY Slip Op 50916(U)

Decided on July 14, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 14, 2024
Supreme Court, Kings County

Valerie Bondarevsky and MARGARITA BARTASUNAITE, Plaintiffs,

against
Shamis Chiropractic P.C. & IGOR SHTARKMAN, Defendants.

Index No. 502702/2024

Law Office of Robert V. Beltrani, Mineola (Robert V. Beltrani of counsel) for Plaintiffs. 
The Law Offices of Vincent Miletti, Astoria (Vincent Miletti, of counsel) for Defendants.

Aaron D. Maslow, J.

The following numbered papers were read on this motion:
NYSCEF Doc No. 3: Defendants' Notice of Motion to Compel Arbitration
NYSCEF Doc No. 4: Affirmation of Vincent Miletti, Esq. in Support of Motion to Compel Arbitration
NYSCEF Doc No. 5: Defendants' Memorandum of Law in Support of Motion to Compel Arbitration
NYSCEF Doc No. 6: Exhibit A, Independent Contractor Agreement
NYSCEF Doc No. 7: Exhibit B, Certificate of Incorporation
NYSCEF Doc No. 8: Exhibit C, Summons and Complaint
NYSCEF Doc No. 9: Request for Judicial Intervention
NYSCEF Doc No. 10: Defendants' Notice of Motion to Dismiss Complaint
NYSCEF Doc No. 11: Affirmation of Vincent Miletti, Esq. in Support of Motion to Dismiss Complaint
NYSCEF Doc No. 12: Memorandum of Law in Support of Defendants' Motion to Dismiss Complaint
NYSCEF Doc No. 13: Affidavit of Dr. Igor Shtarkman in Support of Motion to Dismiss [*2]Complaint
NYSCEF Doc No. 14: Affidavit of Dr. Gabriella Shvartsberg in Support of Motion to Dismiss Complaint
NYSCEF Doc No. 15: Affidavit of Julia Alikina in Support of Motion to Dismiss Complaint
NYSCEF Doc No. 16: Affidavit of Yekaterina Grauer, DPM in Support of Motion to Dismiss Complaint
NYSCEF Doc No. 17: Exhibit A, Independent Contractor Agreement
NYSCEF Doc No. 18: Exhibit B, Stipulation
NYSCEF Doc No. 19: Exhibit C, Separation Letter, dated January 21, 2021
NYSCEF Doc No. 20: Exhibit D, Complaint, Suffolk County
NYSCEF Doc No. 21: Exhibit E, Amended Complaint in Suffolk County Supreme Court
NYSCEF Doc No. 22: Exhibit F, Order in Suffolk County Supreme Court
NYSCEF Doc No. 23: Exhibit G, Corporate Documents re VB Billing Services, Inc.
NYSCEF Doc No. 24: Exhibit H, Five-star review of medical facility
NYSCEF Doc No. 25: Exhibit I, Valerie Bondarevsky message to Dr. Shtarkman, dated February 22, 2021
NYSCEF Doc No. 26: Exhibit J, Valerie Bondarevsky picture in scrubs, dated March 17, 2021
NYSCEF Doc No. 27: Exhibit K, Payroll reports, dated September 2, 2021
NYSCEF Doc No. 28: Exhibit L, Summons and Complaint
NYSCEF Doc No. 29: Exhibit M, Affidavit of Julie Alikina in Support of Motion to Dismiss Complaint
NYSCEF Doc No. 30: Exhibit N, Affidavit of Dr. Gabriela Shvartsberg in Support of Motion to Dismiss Complaint
NYSCEF Doc No. 31: Exhibit O, Affidavit of Yekaterina Grauer, DPM in Support of Motion to Dismiss Complaint
NYSCEF Doc No. 38: Notice of Plaintiff's Cross-Motion to Dismiss Counterclaims
NYSCEF Doc No. 39: Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Complaint & in Support of Cross-Motion to Dismiss Counterclaims
NYSCEF Doc No. 40: Affirmation of Robert V. Beltrani, Esq. in Opposition to Defendants' Motion to Dismiss Complaint & in Support of Cross-Motion to Dismiss Counterclaims
NYSCEF Doc No. 41: Exhibit A, Note
NYSCEF Doc No. 42: Exhibit B, Message
NYSCEF Doc No. 43: Exhibit C, Message
NYSCEF Doc No. 44: Affirmation of Robert V. Beltrani, Esq. in Opposition to Motion to Compel Arbitration
NYSCEF Doc No. 45: Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration
NYSCEF Doc No. 46: Defendants' Memorandum of Law in Opposition to Cross-Motion to Dismiss Counterclaims
NYSCEF Doc No. 47: Defendants' Reply Memorandum of Law in Support of Motion to Compel Arbitration
NYSCEF Doc No. 48: Defendants' Reply Memorandum of Law in Support of Motion to Dismiss Complaints
NYSCEF Doc No. 49: Reply Affirmation of Robert V. Beltrani, Esq. in Support of Motion to Dismiss Complaints
NYSCEF Doc No. 50: Letter to Court from Law Offices of Robert Beltrani, dated May 7, 2024, Referencing Audio Recording on USB flash drive
Upon the foregoing papers, the within motions are determined as follows.
Calendar No. 3, Motion Sequence No. 2

 Defendants' Motion to Compel Arbitration of the Dispute 
 Alleged in the Complaint as it Pertains to Plaintiff Valerie Bondarevsky

Defendants Shamis Chiropractic P.C. and Igor Shtarkman (collectively, "Defendants") seek the following relief:
(1) An Order compelling arbitration of the dispute alleged in the Complaint, as it concerns Plaintiff Valerie Bondarevsky and staying the action pursuant to CPLR 7503 (see NYSCEF Doc No. 3, Notice of Motion); or
(2) In the alternative, if a stay is not granted, Defendants seek an Order directing that the action be bifurcated, to continue with respect to Plaintiff Margarita Bartasunaite in this Court (id.).

 The Nature of the Action
Plaintiff Valerie Bondarevsky commenced the present action against Defendants Shamis Chiropractic P.C. ("Defendant Shamis Chiropractic") & Igor Shtarkman ("Defendant Dr. Shtarkman"), alleging that Defendants:
• Failed to pay Plaintiff Valerie Bondarevsky overtime wages in violation of the Fair Labor Standards Act ("FLSA") (1st cause of action) (see NYSCEF Doc No. 8, Verified Complaint ¶¶ 82-86);
• Failed to pay Plaintiff Valerie Bondarevsky wages and overtime wages in violation of the New York Labor Law ("NYLL") (2nd cause of action) (id. ¶¶ 87-91);
• Failed to pay Plaintiff Valerie Bondarevsky the spread-of-hours under the NYLL (3rd cause of action) (id. ¶¶ 92-94);
• Failed to provide Plaintiff Valerie Bondarevsky proper wage statements pursuant to NYLL § 195 (4th cause of action) (id. ¶¶ 95-98);
• Subjected Plaintiff Valerie Bondarevsky to sex and gender identity discrimination in violation of New York State Human Rights Law ("NYSHRL") §§ 290 and 296 (5th cause of action) (id. ¶¶ 99-110);
• Subjected Plaintiff Valerie Bondarevsky to gender and sexual discrimination in violation of New York City Administrative Code ("NYCAC") § 8-107 (1) (a) (6th cause of action) (id. ¶¶ 111-120);
• Subjected Plaintiff Valerie Bondarevsky to retaliation in violation of NYSHRL § 296 (7th cause of action) (id. ¶¶ 121-133);
• Subjected Plaintiff Valerie Bondarevsky to retaliation in violation of the New York City Human Rights Law ("NYCHRL") (8th cause of action) (id. ¶¶134-146);
• Subjected Plaintiff Valerie Bondarevsky to wrongful termination in violation of NYSHRL § 296 (9th cause of action) (id. ¶¶ 147-150);
• Subjected Plaintiff Valerie Bondarevsky to wrongful termination in violation of the NYCHRL, namely, New York City Administrative Code § 8-107 (10th cause of action) (id. ¶¶ 151-152);
• Subjected Plaintiff Valerie Bondarevsky to constructive discharge in violation of NYSHRL § 296 (11th cause of action) (id. ¶¶153-157);
• Engaged in a breach of contract, namely, of Plaintiff Valerie Bondarevsky's employment agreement (12th cause of action) (id. ¶¶100-107); and
• Engaged in tortious interference with prospective business opportunity by interfering with the prospective business relationships between Plaintiff Valerie Bondarevsky and past, present and future employers (13th cause of action) (id. ¶¶ 108-121).

 Defendants' Position
In the present motion (to wit, calendar number 3, motion sequence number 2), Defendants posit that the action should be stayed and Plaintiff Valerie Bondarevsky should be compelled to bring her claims against Defendants under the auspices of the National Arbitration and Mediation ("NAM") Comprehensive Dispute Resolution Program pursuant to the arbitration agreement set forth within the Independent Contractor Agreement (see NYSCEF Doc No. 6, Independent Contractor Agreement ¶ 15) entered into between Plaintiff Valerie Bondarevsky and Defendants (see NYSCEF Doc No. 5, Memorandum of Law ¶ 2).
On this basis, Defendants request that the Court issue an Order compelling Plaintiff Valerie Bondarevsky to arbitrate her claims against Defendants (id.).

 The Independent Contractor Agreement at the Core of Defendants' Motion to Compel Arbitration
Defendants allege that on February 15, 2021, Plaintiff Valerie Bondarevsky and Defendants entered into an agreement titled "Independent Contractor Agreement" ("Independent Contractor Agreement"), pursuant to which Defendants retained Plaintiff Valerie Bondarevsky as a Medical Biller, in which capacity she was tasked to provide billing services (see NYSCEF Doc No. 6, Independent Contractor Agreement ¶ 1 [a]).
As outlined in the Independent Contractor Agreement, the billing services to be performed by Plaintiff Valerie Bondarevsky included, among other things, the following tasks:
• Medical billing, collections, and appeals;
• Reviewing case notes to ensure billing compliance;
• Weekly billing processing to ensure no delays in payments and collections;
• Reviewing and resolving patient billing complaints;
• Preparing, reviewing and sending patient statements;
• Reviewing rates from insurance carriers for accuracy of payments;
• Addressing denials from insurance companies and ensuring follow-ups with secondary insurance carriers; and
• Identifying and resolving non-payment issues.
(See NYSCEF Doc No. 6, Independent Contractor Agreement ¶ 3 [c].)
Defendant Dr. Shtarkman is, and was, the owner and operator of Defendant Shamis Chiropractic (see NYSCEF Doc No. 8, Verified Complaint ¶ 8). As set forth more fully above, Plaintiff Valerie Bondarevsky claims that from February 2021 to the present, Defendants, engaged in, inter alia, discriminatory practices via-a-vis her and Plaintiff Margarita Bartasunaite and failed to pay them certain wages (id. ¶¶ 82-157).
 

 The Arbitration Provision in
the Independent Contractor Agreement
Critically, the Independent Contractor Agreement contains an arbitration clause which reads as follows:
15) Jurisdiction and Venue
a) This Agreement is to be construed pursuant to the laws of the State of New York. Contractor agrees to submit to the jurisdiction and venue within New York State in the County of New York without regard to conflict of laws and provisions, for any claims, disputes, or controversies arising, directly or indirectly, out of or relating to this Agreement [sic] any alleged breach thereof, shall be resolved by final and binding Arbitration administered by National Arbitration and Mediation ("NAM") in accordance with NAM's Comprehensive Dispute Resolution Rules and Procedures and the Fee Schedule in effect at the time the claim is filed with NAM.
(NYSCEF Doc No. 6, Independent Contractor Agreement ¶ 15 [a].)
Plaintiff Valerie Bondarevsky is alleged to have executed the Independent Contractor Agreement (id. 9).

 Defendants' Motion to Compel Arbitration, Which Rests on the Arbitration Agreement Contained in the Independent Contractor Agreement, Is Unavailing in that it Hinges on the Unauthenticated Independent
  Contractor Agreement in Violation of the Business Record Exception to the Hearsay Rule
Defendants' motion to compel arbitration must be denied on a basis overlooked by the parties.
Defendants' motion to compel arbitration rests on the arbitration agreement embedded in the Independent Contractor Agreement (see NYSCEF Doc No. 6, Independent Contractor Agreement ¶ 15 [a]). Notably, the motion to compel arbitration is not accompanied by an Affidavit from a person with knowledge, which could serve as a vehicle to authenticate the Independent Contractor Agreement. 
Instead, Defendants purport to authenticate the Independent Contractor Agreement through their counsel's Memorandum of Law, in which counsel asserts as follows:
On or about February 15, 2021, Ms. Bondarevsky and Defendants entered into an agreement titled "Independent Contractor Agreement" (hereinafter, referred to as the "IC [*3]Agreement"). Exhibit A.
(NYSCEF Doc No. 5, Memorandum of Law ¶ 6.)
It cannot be gainsaid that counsel's attempt to authenticate the Independent Contractor Agreement contravenes the business record exception to the hearsay rule under CPLR 4518. As held by this Court in a recent merchant cash advance case in which the Court denied plaintiff's motion for summary judgment on the basis that, inter alia, the affidavit submitted by the chief executive officer of plaintiff failed to authenticate the agreement at the heart of the summary judgment motion by failing to satisfy the requirements of the business record exception to the hearsay rule under CPLR 4518:
Plaintiff herein fails to properly authenticate the alleged merchant cash advance agreement pursuant to the business record exception to the hearsay rule (see CPLR 4518 [a]). Plaintiff's affidavit does not fully comply with the requirements set forth by CPLR 4518 (a), and such foundation is necessary to admit a "writing or record" to prove the truth asserted by the record's content (Bank of NY Mellon v Gordon, 171 AD3d 197 [2d Dept 2019]).
In order for a business record to be admissible, the tendering party's affidavit must note: (1) that the recording was made in the regular course of business, (2) that it was the regular course of such business to make the recording, (3) that the recording was made at or near the time of the subject transaction or occurrence, and (4) that any informant in the evidentiary chain was under a business duty to accurately report the information (see People v Patterson, 28 NY3d 544 [2016]).
The affidavit of Jay Keller, chief executive officer of Plaintiff, does not lend itself toward authentication of the alleged agreement and the payment history, as paragraph 3 does not establish specificity as to the recorder's personal knowledge and fails to state whether it was the regular course of Plaintiff's business to make the records (see NYSCEF Doc No.12 ¶ 3).
(Global Merchant Cash Inc. v LPZ Carriers LLC, 81 Misc 3d 1236(A) [Sup Ct. Kings County, 2024].)
Further, aside from the business record exception to the hearsay rule, the contract was not properly authenticated in any other manner (see Young v Crescent Coffee, Inc., 222 AD3d 704 (2d Dept 2023); Fairlane Financial Corp. v Greater Metro Agency, Inc., 109 AD3d 868 (2d Dept 2013).

 Conclusion
In short, with respect to calendar number 3, motion sequence number 2, insofar as Defendants failed to authenticate the Independent Contractor Agreement, which is at the heart of their motion to compel arbitration, Defendants' motion to compel arbitration must be denied.
 

 Defendants' Motion to Dismiss the Complaint
Under Calendar No. 1, Motion Sequence No. 1, Pursuant to CPLR 3211 (a) (1)
Defendants have interposed a motion to dismiss Plaintiffs' Complaint pursuant to CPLR 3211 (a) (1) on the purported basis that "the documentary evidence calls for dismissal" (see NYSCEF Doc No. 10, Notice of Motion).
As set forth more fully above, Plaintiffs allege that Defendants: (1) failed to pay Plaintiffs overtime wages in violation of the FLSA (see NYSCEF Doc No. 8, Verified Complaint ¶¶ 82-86); (2) failed to pay Plaintiffs wages and overtime wages in violation of the NYLL (id. ¶¶ 87-91); (3) failed to pay Plaintiffs the spread-of-hours under the NYLL (id. ¶¶ 92-94); (4) failed to provide Plaintiffs proper wage statements pursuant to NYLL § 195 (id. ¶¶ 95-98); (5) subjected Plaintiffs to sex and gender identity discrimination in violation of NYSHRL §§ 290 and 296 (id. ¶¶ 99-110); (6) subjected Plaintiffs to gender and sexual discrimination in violation of NYCAC 8-107 (1) (a) (id. ¶¶ 111-120); (7) subjected Plaintiffs to retaliation in violation of NYSHRL § 296 (id. ¶¶ 121-133); (8) subjected Plaintiffs to retaliation in violation of the NYCHRL (id. ¶¶134-146); (9) subjected Plaintiffs to wrongful termination in violation of NYSHRL § 296 (id. ¶¶ 147-150); (10) subjected Plaintiffs to wrongful termination in violation of the NYCHRL, namely, New York City Administrative Code § 8-107 (id. ¶¶ 151-152); (11) subjected Plaintiffs to constructive discharge in violation of NYSHRL § 296 (id. ¶¶153-157); (12) breached Plaintiffs' employment agreement (id. ¶¶100-107); and (13) engaged in tortious interference with prospective business opportunity by interfering with the prospective business relationships between Plaintiffs and past, present and future employers (id. ¶¶ 108-121).
CPLR 3211 (a) (1) provides that "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that: (1) a defense is founded upon documentary evidence."
Insofar as the relief contemplated under CPLR 3211 (a) (1) is extraordinary in nature, our State's highest Court has narrowly circumscribed the scope of this statutory provision by holding that a motion to dismiss a complaint pursuant to CPLR 3211 (a) (1) on the basis that a defense is founded on documentary evidence "may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 327 [2002]).
Critical in this context, the Second Department has repeatedly held that, as a condition sine qua non for the grant of a motion to dismiss under CPLR 3211 (a) (1):
The evidence submitted in support of such motion must be " 'documentary' " or the motion must be denied (Fontanetta v John Doe 1, 73 AD3d at 84, quoting Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10, at 22).
(Cives Corp. v George A. Fuller Co., Inc., 97 AD3d 713, 714 [2d Dept 2012].)
Consistent with the Second Department's restrictive approach motions to dismiss under [*4]CPLR 3211 (a) (1), it has held that "[i]n order for evidence to qualify as 'documentary,' it must be unambiguous, authentic, and undeniable" (Granada Condominium III Assn. v Palomino, 78 AD3d 996, 997 [2d Dept 2010]).
Perplexingly, in the instant case, the ostensible "documentary evidence" proffered by Defendants to buttress their motion to dismiss under CPLR 3211 (a) (1) consists of a plethora of affidavits submitted by personnel of Defendant Dr. Shtarkman in which the affiants attest to the character of Dr. Shtarkman.
For instance, Defendants rely on the affidavit of Dr. Gabriella Shvartsberg in support of their motion to dismiss, in which affidavit, Dr. Shvartsberg effusively portrays Defendant Dr. Shtarkman as follows, eschewing any reference to her personal knowledge as to grave accusations leveled by Plaintiffs against Dr. Shtarkman, including sexual harassment, failure to pay overtime wages and discrimination:
3. I am a colleague of Dr. Igor Shtarkman, the owner and operator of Shamis Chiropractic, P.C., and I have worked with him for over four (4) years.
4. Dr. Shtarkman is an outstanding professional chiropractor who goes above and beyond for his patients. He works extremely hard from morning till night to please and care for his patients.

 ***
6. From the day I met Dr. Shtarkman up until today he has always been extremely ethical to both his patients, and his staff. Dr. Shtarkman and I have always put our staff first , [sic] we make sure everyone is treated fairly and respectfully.

 ***
8. Whenever I need help he is one of the first people I call and depend on at this point and can't imagine that he would ever cause anyone any type of harm.
9. If any previous staff member, in this instance Ms. Valerie Bondarevsky or Ms. Margarita Bartasunaite, is accusing him of being unethical, or engaging in any nefarious behavior, I would highly consider an investigation into the accusers themselves.
(NYSCEF Doc No. 14, Dr. Shvartsberg Aff ¶¶ 3-4, 6 and 8-9.)
Likewise, in support of their motion to dismiss under CPLR 3211 (a) (1), Defendants proffer the affidavit of Yekaterina Grauer, DPM, who, much like Dr. Gabriella Shvartsberg, extols the virtues of Defendant Dr. Shtarkman, all the while remaining studiously silent as to her knowledge concerning the interactions between Defendant Dr. Shtarkman and Plaintiffs:
3. I have known Igor Shtarkman in a professional setting for the last 5 years. We have [*5]worked together in his practice, Sheepshead Bay Chiropractic & Physical Therapy & Acupuncture and Podiatry.
4. During this time, Dr. Shtarkman has always conducted himself in the utmost professional manner. Always caring for both his patients and his staff. Dr. Shtarkman never deviated from the highest standards of integrity.

 ***
6. I can gladly attest to Dr. Shtarkman's strength of character. I would recommend Dr. Shtarkman as a medical professional without reservation, to both patients and colleagues.
(NYSCEF Doc No. 16, Grauer Aff ¶¶ 3-4, 6.)
Similarly, in another affidavit propounded by Defendants in support of their motion to dismiss, sworn on February 11, 2024 by Julia Alikina — the very same day as the above-quoted affidavits sworn by Dr. Gabriella Shvartsberg and Yekaterina Grauer, DPM — a third affiant lauds Defendant Dr. Shtarkman as follows:
3. I am a colleague of Dr. Igor Shtarkman, the owner and operator of Shamis Chiropractic, P.C. and I have worked with him for over eight (8) years during which time we have worked together at Sheepshead Bay Clinic as healthcare professionals, providing patients with chiropractic care and acupuncture care, respectively.
4. Over this time period, we not only established a strong professional bond, but also became friends and got to know each other's families and became an extended family, so to speak.
5. Dr. Shtarkman is not only a dedicated professional but also truly passionate about helping all of his patients improve their health and quality of life.

 ***
10. In summary, Dr. Shtarkman's work ethic and his dedication to his patients and staff, are nothing short of admirable and inspirational.
(NYSCEF Doc No. 15, Alikina Aff ¶¶ 3-4, 5, 10.)
It cannot be gainsaid that the materials submitted by Defendants in support of their motion to dismiss the Complaint, which consist of the three above-described affidavits, as well as the affidavit of Defendant Dr. Shtarkman, do not constitute "documentary evidence" within the intendment of CPLR 3211 (a) (1). 
As held by the Second Department in a Decision in which the Court delineated the contours of the term "documentary evidence" in the CPLR 3211 (a) (1) context:
From the cases that exist, it is clear that judicial records, as well as documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other papers, the contents of which are "essentially undeniable," would qualify as "documentary evidence" in the proper case (id.; see 2 Commercial Litigation in New York State Courts § 7:60 [3 West's NY Prac Series 2d ed]).
(Fontanetta v John Doe, 73 AD3d 78, 85 [2d Dept 2010].)
Shortly after issuing the Fontanetta Decision, the Second Department revisited the "documentary evidence" concept in the context of a motion to dismiss interposed, as here, under CPLR 3211 (a) (1), in which Decision the Court underscored as follows that affidavits — such as those upon which Defendant rely in support of their motion to dismiss — do not qualify as "documentary evidence" under CPLR 3211 (a) (1):
In order for evidence to qualify as "documentary," it must be unambiguous, authentic, and undeniable (Fontanetta v John Doe 1, 73 AD3d 78, 84-86 [2010]). Neither affidavits, deposition testimony, nor letters are considered "documentary evidence" within the intendment of CPLR 3211 (a) (1) (see Suchmacher v Manana Grocery, 73 AD3d 1017 [2010]; Fontanetta v John Doe 1, 73 AD3d at 85-87).
Here, the material submitted by the defendant in support of her motion, namely, her own affidavit and a letter sent to her from the plaintiff's attorney, did not constitute "documentary evidence" within the meaning of CPLR 3211 (a) (1). Even if it had constituted documentary evidence, it failed to utterly refute the plaintiff's allegations and conclusively establish a defense as a matter of law (see Reiver v Burkhart Wexler & Hirschberg, LLP, 73 AD3d 1149 [2010]; Fontanetta v John Doe 1, 73 AD3d 78 [2010]).
(Granada Condominium III Assn. v Palomino, 78 AD3d 996, 997 [2d Dept 2010] [emphasis added].)
In short, inasmuch as the evidence at the heart of Defendants' motion to dismiss under CPLR 3211 (a) (1) does not constitute "documentary evidence," such motion must be denied.[FN1]

 Defendants' Motion to Dismiss the Complaint Under Calendar No. 1, Motion Sequence No. 1,
  Pursuant to CPLR 3211 (a) (7)
Defendants move to dismiss the Complaint pursuant to CPLR 3211 (a) (7) on the ground that the Complaint fails to state a cause of action.
In support of their motion to dismiss the Complaint, Defendants attempt to downplay Plaintiffs' claims, which Defendants characterize as follows:
4. Plaintiffs Ms. Bondarevsky and Ms. Bartasunaite were two former employees at different times for Defendants, who both make frivolous, meritless, and fictious claims of gender discrimination, harassment and retaliation. At the core of their lawsuit, Plaintiffs allege gender discrimination and retaliation and seek to support their case by offering up either fictitious stories, innocuous and benign commentary or routine, unactionable interactions with Dr. Shtarkman, mostly occurring in a period of just a few months, between January 2021 through March 2021.
5. Plaintiffs are two very different people with two very different experiences when they were employed. Ms. Bondarevsky, employed from February 2021 through March 2021, argued that while an employee, Defendant Dr. Shtarkman (i) exhibited unusual and problematic behavior, (ii) asked to meet outside of the office and (iii) brought sushi and offered wine. On the other hand, Ms. Bartasunaite, hired from 2017 until her resignation in January 2021, only identifies one action specific to her in that Dr. Shtarkman retaliated against her by telling a prospective employer she was terminated for poor performance.
(NYSCEF Doc No. 11, Miletti Aff ¶¶ 4-5.)
Defendants seek to downplay Plaintiffs' allegations by asserting that Plaintiffs support their case by presenting evidence such as (a) an "innocuous and neutral comment in an email concerning 'collections' " and (b) a text from Ms. Bondarevsky expressing frustration over Defendant Dr. Shtarkman's foul mouth (id. ¶ 6). Defendants indicate that "both Plaintiffs suggest that they were unable to procure jobs in the future, post-separation, based on the Defendants' campaign of retaliation" (id.).
Defendants further endeavor to minimize Plaintiffs' suit by conclusorily asserting that "the fact is that there is no discrimination here" (id. ¶ 7) and that Plaintiffs complain about mere "petty slights and trivial inconveniences" (id.).
Defendants further seek to underscore the lack of merit of Plaintiffs' claims by asserting that "Plaintiffs offer up their Complaint that contains nothing but unactionable, defamatory trash solely intended to intimidate Defendant Dr. Shtarkman into paying out money for no other reason than that he is a doctor" (id. ¶ 8).
Further seeking to trivialize Plaintiffs' claims at this early stage on a motion to dismiss, Defendants assert that "[o]nce this Court takes a moment to see nothing but irrelevant allegations, all that remains are the types of petty, unactionable workplace grievances courts routinely dismiss at the pleadings stage" (id.).

 Defendants' Reliance on an Alleged Payroll Report
to Challenge Plaintiff Margarita Bartasunaite's Unpaid Wages Claim Is Unavailing in that Such Payroll Report Is
  Unauthenticated in Violation of the Business Record Exception to the Hearsay Rule
Defendants allege as follows with respect to Plaintiff Margarita Bartasunaite via their counsel's Affirmation:
9. What is particularly egregious here is just simply how meritless this is. Concerning Ms. Bartasunaite, not a single shred of evidence is provided to support a discrimination claim. Moreover, her claims of any alleged "unpaid wages" are incorrect on their face. The attached payroll report shows that Ms. Bartasunaite was paid (a) above the Fair Labor Standards Act ("FLSA") annual minimum, (b) above the FLSA weekly minimum, (c) above the New York Labor Law ("NYLL") annual minimum, and (d) above the NYLL weekly minimum. See Exhibit K.
(Id. ¶ 9 [emphasis added]).
Notably, a review of the payroll report relied upon by Defendants in support of their contention that Plaintiff Margarita Bartasunaite's unpaid wages claim is meritless reveals that such payroll report is not authenticated, in violation of the business records exception to the hearsay rule, and, as such, cannot be considered by the Court. It is indeed well-established that, in order for a business record to be admissible, the tendering party's affidavit must note: (1) that the recording was made in the regular course of business, (2) that it was the regular course of such business to make the recording, (3) that the recording was made at or near the time of the subject transaction or occurrence, and (4) that any informant in the evidentiary chain was under a business duty to accurately report the information (see People v Patterson, 28 NY3d 544 [2016]).

 Defendants' Characterization of Plaintiff Valerie Bondarevsky as "Absolutely Terrible at What She Was Contracted for" Raises 
 Issues of Fact that Are Ill-Suited in the Context of a Motion to Dismiss
Defendants seek to undermine Plaintiff Valerie Bondarevsky's case by characterizing her derisively as follows in their counsel's Affirmation:
10. Ms. Bondarevsky's case is even worse. Ms. Bondarevsky was retained as an independent contractor through her company, VB Billing Services, Inc., on or about February 15, 2021 . . . On the said date, Ms. Bondarevsky executed an Independent Contractor Agreement . . . and immediately began working with Defendants . . . Not only was she absolutely terrible at what she was contracted for, being unable to perform, having no expertise as portrayed, submitting billing incorrectly, using the wrong codes, writing the wrong description of services, making up numbers and doctoring invoices simply to push items off [sic] her desk, failing to provide updates on billables, failing to provide updates on collections and inability [sic] to use the systems in place for billing and records. She was just simply awful.
(Id. ¶ 10 [emphasis added]).
Defendants' puerile characterization of Plaintiff Valerie Bondarevsky as "just simply [*6]awful" and "absolutely terrible at what she was contracted for" (id.) raises issues of fact that are ill-suited in the context of a motion to dismiss.

 Defendants' Motion to Dismiss Eschews the Serious Allegations Featured in the Complaint
Defendants' motion to dismiss sidesteps the grave allegations featured in the Complaint. For instance, in the Complaint, it is alleged as follows:
Defendant Shtarkman purposely engaged in sexual, obscene and vulgar conversations in Plaintiff's [sic] presence, which made them feel uncomfortable and anxious. He often tried to engage in sexually suggestive and obscene conversations with Plaintiffs. He bragged about his sexual exploits and sexual prowess, and about his many girlfriends. Defendant Shtarkman respecting no boundaries even asked the Plaintiffs about their sexual histories and sexual preferences.
(NYSCEF Doc No. 8, Complaint ¶ 62 [emphasis added].)
While a trier of fact may ultimately opt not to credit Plaintiffs' grave allegations, the Court cannot do so at the motion to dismiss stage. It is indeed well-settled that on a motion to dismiss pursuant to CPLR 3211 the Court must accept the facts alleged by the plaintiff as true and liberally construe the complaint, according it the benefit of every possible favorable inference (see 511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151-152 [2002]).
Indeed, on a motion to dismiss, the role of the Court is narrowly circumscribed to "determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87 [1994]).
Plaintiffs posit that Defendants' motion to dismiss the Complaint for failure to state a cause of action under CPLR 3211 (a) (7) should be denied on the basis that "Defendants simultaneously filed and [sic] Answer with Counterclaims with the instant motion to dismiss" (NYSCEF Doc No. 40, Beltrani Aff ¶¶ 3). Plaintiffs in effect contend that by virtue of Defendants' filing of an Answer on February 18, 2024, the same day that Defendants interposed a motion to dismiss the Complaint, Defendants ipso facto waived the right to proceed with their motion to dismiss (see id.).
Plaintiffs fail to cite any case law buttressing this facile line of argument (id). Such silence is scarcely surprising in that New York courts have held as follows that a defendant's service of an answer does not operate to bar such party from interposing a motion to dismiss under CPLR 3211 (a) (7):
Contrary to plaintiff's contention, defendant was permitted to move to dismiss on the ground that the complaint fails to state a cause of action notwithstanding defendant's service of an answer (CPLR 3211 [a] [7]; [e]). (Health & Endurance Medical, P.C. v Travelers Property Casualty Ins. Co., 31 Misc 3d 150[A] [App. Term, 2d Dept 2011].)
However, Defendants' motion to dismiss the Complaint under CPLR 3211 (a) (7) on the basis that the Complaint fails to state a cause of action should be denied on another ground than the waiver argument espoused by Plaintiffs. A review of the Complaint (see NYSCEF Doc No. 8, Complaint ¶¶ 20-121) reveals that Plaintiffs have satisfied our State's lenient notice pleading standard in drafting the Complaint, which Complaint duly sets forth legally cognizable causes of action (see id.). As held by the Second Department in underscoring the forbearing approach adopted by New York courts in ascertaining whether a Complaint should survive a motion to dismiss in the CPLR 3211 (a) (7) context:
Moreover, the Supreme Court properly denied that branch of the defendant's motion which was to dismiss the complaint for failure to state a cause of action (see CPLR 3211 [a] [7]). In reviewing a motion pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action, the facts as alleged in the complaint must be accepted as true, the plaintiff is accorded the benefit of every possible favorable inference, and the court's function is to determine only whether the facts as alleged fit within any cognizable legal theory (see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Leon v Martinez, supra at 87-88; Lupski v County of Nassau, 32 AD3d 997 [2006]; Richmond Shop Smart, Inc. v Kenbar Dev. Ctr., LLC, 32 AD3d 423 [2006]; Simmons v Edelstein, 32 AD3d 464 [2006]). In this regard, "the criterion is whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one" (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]; see Leon v Martinez, supra at 88). (Martin v New York Hosp. Med. Ctr. of Queens, 34 AD3d 650, 651 [2d Dept 2006].)
As the Second Department subsequently articulated the indulgent approach adopted by New York vis-à-vis complaints in the CPLR 3211 (a) (7) arena:
"On a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Breytman v Olinville Realty, LLC, 54 AD3d 703, 703-704 [2008]; see Leon v Martinez, 84 NY2d 83, 87-88 [1994]). A motion to dismiss pursuant to CPLR 3211 (a) (7) will fail if, "taking all facts alleged as true and according them every possible inference favorable to the plaintiff, the complaint states in some recognizable form any cause of action known to our law" (Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 38 AD3d 34, 38 [2006]).
(Medical Arts Off. Servs., Inc. v Erber, 89 AD3d 698, 699 [2d Dept 2011].)
In sum, Defendants' motion to dismiss under CPLR 3211 (a) (7) must be denied. [*7]Naturally, the instant Decision does not foreclose Defendants' opportunity to revisit the dispositive motion route — under CPLR 3212 — once the parties have had an opportunity to engage in discovery in a case that is, at this juncture, but in its infancy.

 Plaintiffs' Cross-Motion to Dismiss Defendants' Counterclaims Under Calendar No. 2, Motion Sequence No. 3
Plaintiffs interposed a cross-motion to dismiss Defendants' Counterclaims pursuant to CPLR 3211 (see NYSCEF Doc No. 38, Notice of Cross-Motion).
On a motion to dismiss a pleading for failure to state a cause of action pursuant to CPLR 3211 (a) (7), the Court is bound to accept the facts alleged by the plaintiff as true and liberally construe the complaint, according it the benefit of every possible favorable inference. As the Court of Appeals articulated the forgiving standard applied in determining whether a challenged pleading can survive a CPLR 3211 motion:
In the posture of defendants' CPLR 3211 motion to dismiss, our task is to determine whether plaintiffs' pleadings state a cause of action. The motion must be denied if from the pleadings' four corners "factual allegations are discerned which taken together manifest any cause of action cognizable at law" (Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001], quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). In furtherance of this task, we liberally construe the complaint (see e.g. Leon v Martinez, 84 NY2d 83, 87 [1994]; CPLR 3026), and accept as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion (see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001] [collecting cases]; Wieder v Skala, 80 NY2d 628, 631 [1992]). We also accord plaintiffs the benefit of every possible favorable inference (see Sokoloff, 96 NY2d at 414). (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151-152 [2002].) As such, on a motion to dismiss under CPLR 3211 (a) (7), the role of the Court limited to "determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87 [1994]).
In their seventh counterclaim, Defendants allege that Plaintiffs libeled Defendants in that "Plaintiffs have made false, libelous, and defamatory statements about Defendants" (see NYSCEF Doc No. 32, Answer ¶ 131). While Plaintiffs did not address this issue in their opposition papers, a review of Defendants' seventh counterclaim for libel reveals that Defendants failed to plead such counterclaim with particularity, as is required under CPLR 3016 (a), which provides as follows: "In an action for libel . . . the particular words complained of shall be set forth in the complaint. . . ."
In their formulaic seventh counterclaim, Defendants do not adhere with their statutory duty to plead such counterclaim with particularity by failing to set forth the particular words complained of (id. ¶¶ 131-143), leaving the reader — and Plaintiffs — with no alternative but to speculate as to the nature of the offending words at issue in the counterclaim in question. In [*8]these circumstances, Defendants' seventh counterclaim for libel must be dismissed. As held by the Second Department in dismissing a defamation cause of action pursuant to CPLR 3211 (a) (7):
However, we agree with the Supreme Court's determination to grant that branch of LICH's motion which was pursuant to CPLR 3211 (a) (7) to dismiss the fourth cause of action insofar as asserted against it. The allegations in the fourth cause of action did not satisfy the special pleading requirements of CPLR 3016 (a), as they did not set forth the actual words complained of, and they also failed to specify the particular persons to whom LICH allegedly published the alleged defamatory statements (see CSI Group, LLP v Harper, 153 AD3d 1314, 1320 [2017]; Ott v Automatic Connector, 193 AD2d 657, 658 [1993]).
(Golia v Vieira, 162 AD3d 865, 869 [2d Dept 2018] [emphasis added].)
In their eighth counterclaim for slander, Defendants allege that Plaintiffs slandered Defendants by virtue of "Plaintiffs' false, slanderous and defamatory statements [which] were broadcast to persons other than Defendants" (see NYSCEF Doc No. 32, Answer ¶ 148). 
While Plaintiffs did not address this issue in their opposition papers, an analysis of Defendants' eighth counterclaim reveals that such counterclaim is not pled with particularity, in contravention of CPLR 3016 (a), which requires that, with respect to claims for "slander, the particular words complained of shall be set forth in the complaint. . . ." Beyond failing to adhere with their duty to set forth the words complained of in their eighth counterclaim for slander, Defendants also failed to identify the person or persons to whom the allegedly slanderous statements were made (see NYSCEF Doc No. 32, Answer ¶¶ 145-156). Based on these two infirmities, Defendants' eighth counterclaim for slander must be dismissed. As held by the Second Department in dismissing a defamation claim on summary judgment:
The eleventh cause of action alleges that Harper published defamatory statements to "[c]ertain clients." CPLR 3016 (a) provides that in an action to recover damages for libel or slander, the particular words complained of shall be set forth in the complaint. A cause of action sounding in defamation which fails to comply with these special pleading requirements must be dismissed (see Fusco v Fusco, 36 AD3d 589, 590 [2007]; Simpson v Cook Pony Farm Real Estate, Inc., 12 AD3d 496 [2004]). Failure to state the particular person or persons to whom the allegedly defamatory statements were made also warrants dismissal (see Simpson v Cook Pony Farm Real Estate, Inc., 12 AD3d 496 [2004]). Here, the plaintiffs did not set forth the actual words complained of, nor did they specify the persons to whom Harper allegedly published the statements (see id.; Gill v Pathmark Stores, 237 AD2d 563 [1997]). Accordingly, the Supreme Court, upon reargument, should have granted that branch of the appellants' motion which was for summary judgment dismissing the eleventh cause of action.
(CSI Group, LLP v Harper, 153 AD3d 1314, 1320 [2d Dept 2017] [emphasis added].)
In their ninth counterclaim for defamation per se, Defendants allege that "Plaintiffs' false, libelous and defamatory statements were intended to and tended to impute unfitness, incompetence, untrustworthiness, and criminal conduct to Defendants in the conduct of its [sic] trades, professions, and/or businesses" (see NYSCEF Doc No. 32, Answer ¶ 159). 
A review of the ninth counterclaim reveals that Defendants failed to comply with their duty to plead such counterclaim with particularity. Specifically, Defendants failed to identify the allegedly defamatory statements in their counterclaim, leaving Plaintiffs with no guidance as to the specific nature of the purportedly offending statements at the core of the counterclaim. As such, Defendants' ninth counterclaim for defamation per se must be dismissed. As held by an appellate court with respect to a litigant's putative defamation per se counterclaim:
Nevertheless, in the record before us, defendant fails to state with particularity the allegedly defamatory statements, and therefore his fourth and fifth counterclaims are defective as a matter of law (CPLR 3016 [a] ["the particular words complained of shall be set forth in the complaint"]; Dillon v City of New York, 261 AD2d 34, 40 [1999]).
(Rubin v Napoli Bern Ripka Shkolnik, LLP, 151 AD3d 603, 604 [1st Dept 2017].)
In their tenth counterclaim for intentional infliction of emotional distress, Defendants allege as follows:
165. For the last 3 years, Plaintiffs have stated, in both writing and by way of communications with numerous members of our mutual community, vicious, unwarranted, and harassing statements about Dr. Shtarkman and Shamis.
166. Cumulatively, Plaintiffs' egregious misconduct is beyond the bounds of decent behavior and is intolerable in a civilized society.
(NYSCEF Doc No. 32, Answer ¶¶ 165-166). 
Defendants' tenth counterclaim for intentional infliction of emotional distress shall be dismissed on the basis that the conduct complained of in such cause of action comes within the scope of other traditional tort claims, namely, claims for libel or slander. As held by an appellate court in dismissing a plaintiff's cause of action for intentional infliction of emotional distress:
In any event, the plaintiff's cause of action for intentional infliction of emotional distress must also fail because it falls within the ambit of other traditional tort liability which, in this case, is reflected in plaintiff's causes of action sounding in defamation (Fischer v Maloney, supra, at 558; Butler v Delaware Otsego Corp., 203 AD2d 783, 784-785; Durepo v Flower City Tel. Corp., 147 AD2d 934, 935).
(Herlihy v Metropolitan Museum of Art, 214 AD2d 250, 263 [1st Dept 1995].)
In their eleventh counterclaim for civil harassment, Defendants allege as follows: 
174. Plaintiffs have stated, in both writing and by way of communications with numerous members of our mutual community, vicious, false, defamatory, and/or harassing statements about Defendants, his [sic] family, his [sic] business, almost daily for the past 3 years . . . Plaintiffs have engaged in a course of conduct that has alarmed, caused emotional distress and mental anguish, and seriously annoyed Defendants.
(NYSCEF Doc No. 32, Answer ¶ 174.).
Defendants' eleventh counterclaim for civil harassment shall be dismissed on the ground that such novel cause of action does not exist in New York State, which argument was not raised in Plaintiffs' opposition papers. As held by an appellate court in dismissing a plaintiff's civil harassment cause of action:
Finally, plaintiff's seventh cause of action was properly dismissed on the ground that New York does not recognize a civil cause of action for harassment.
(Broadway Cent. Prop. v 682 Tenant Corp., 298 AD2d 253, 254 [1st Dept 2002].)
An analysis of the remainder of Defendants' counterclaims reveals that such counterclaims survive the forgiving standard applied by New York courts in determining whether a challenged pleading passes muster under CPLR 3211. The counterclaims in question are (1) Defendants' first counterclaim for breach of contract (see NYSCEF Doc No. 32, Counterclaims ¶¶ 89-93), (2) Defendants' second counterclaim for breach of the covenant of good faith and fair dealing (see id. ¶¶ 94-98), (3) Defendants' third counterclaim for tortious interference with contract (see id. ¶¶ 99-104), (4) Defendants' fourth counterclaim for tortious interference with current business relationships (see id. ¶¶ 105-111), (5) Defendants' fifth counterclaim for tortious interference with prospective business relationships (see id. ¶¶ 112-118), and (6) Defendants' sixth counterclaim for unjust enrichment (see id. ¶¶ 119-129).

 Conclusion
Accordingly, it is hereby ORDERED as follows: 
With respect to calendar number 3, motion sequence number 2, it is hereby ORDERED that Defendants' motion to compel arbitration is denied.
With respect to calendar number 1, motion sequence number 1, it is hereby ORDERED that Defendants' motion to dismiss the Complaint under CPLR 3211 (a) (1) and 3211 (a) (7) is denied.
With respect to calendar number 2, motion sequence number 3, it is hereby ORDERED that Plaintiffs' cross-motion to dismiss Defendants' counterclaims is granted with respect to Defendants' seventh, eighth, ninth, tenth, and eleventh counterclaims, and otherwise denied.
E N T E R
AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:The Independent Contractor Agreement (see NYSCEF Doc No. 6), upon which Defendants also rely in support of their motion to dismiss under CPLR 3211 (a) (1), likewise cannot be considered in determining such motion in that, as detailed above, Defendants failed to authenticate this document in contravention of the business record exception to the hearsay rule.